[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The matter before the court was brought by plaintiff Frank's Berkshire Marine, Inc. ("FBM"), against defendant Frank A. Perrino ("Perrino"). General Motors Acceptance Corporation ("GMAC") subsequently intervened as a party plaintiff and Debrah Cook-Tesell ("Cook") intervened as a party defendant. A non-jury trial was conducted by this Superior Court and decision was reserved as to all claims.
I. Facts and Case Travel
The facts relative to this dispute are virtually undisputed by the parties. FBM is a Massachusetts corporation having its principal place of business in Pittsfield, Massachusetts. On March 5, 1988, Cook, at that time a resident of Westford, Massachusetts, entered into an agreement with FBM to purchase a 1988 Sea Ray Motorboat ("the boat"). Under the terms of this agreement, Cook agreed to pay a purchase price of $181,000 for the boat. Cook was to trade in a 1985 Chris Craft Boat ("the trade-in boat") to FBM for $81,000. Of the remaining $100,000, Cook agreed to pay FBM $25,000 in cash and to finance $75,000.
Pursuant to the agreement to finance the purchase of the boat, Cook submitted a credit application to GMAC. GMAC is a New York corporation authorized to do business in Massachusetts. GMAC approved the credit application and agreed to finance $75,000 of the purchase price.
On April 28, 1988, Cook and FBM entered into a retail installment sales contract ("the sales contract") for the purchase of the boat. The sale contract contained the reservation of a security interest in the boat and was assigned by FBM to GMAC. On May 6, 1988, GMAC made payment to FBM in the amount of $75,000. GMAC subsequently filed financing statements under the name of Cook in May 6, 1988, and May 11, 1988, with both the Town Clerk's Office in Westford, Massachusetts and the Secretary of the Commonwealth of Massachusetts respectively.
On or about May 26, 1988, FBM delivered possession of the boat to Cook and John Tesell (Tesell) in Connecticut.[1]
However, because Cook apparently owed $25,000 of the purchase price and sales tax for the boat, FBM withheld the documents of title.
Thereafter, on July 6, 1988, Cook and Tesell borrowed $50,000 from Perrino, a resident of Tiverton, Rhode Island. The debt was evidenced by a promissory note and was signed by both Cook and Tesell. Contemporaneously, Cook executed a security agreement granting Perrino a security interest in the boat. Perrino subsequently filed financing statements in Massachusetts, Connecticut, and Rhode Island under the names of both Cook and Tesell. On July 16, 1988, Cook applied $25,000 of the loan from Perrino to pay FBM the balance of the purchase price for the boat.
Subsequently, in November, 1988, FBM was advised that the trade-in boat was subject to a prior lien. FBM, which had by then sold the trade-in boat, was sued by the lienholder in Massachusetts and refused to deliver to Cook the original bill of sale, the original manufacturer's statement of origin, and the original builder's certificate.
By this time, both the GMAC and the Perrino loans were in default and the boat was surrendered to Perrino in Tiverton, Rhode Island. Thereafter, FBM commenced legal action in Rhode Island and obtained a Writ of Attachment on the boat from this Superior Court on July 25, 1989, in the amount of $50,000. In August, 1989, the boat was transferred to Pirates Cove Marina in Tiverton, Rhode Island for storage.
II. Analysis
In this action, all of the parties claim an interest in the boat and seek a declaratory judgment relative to the order of priority. In addition, there have been several crossclaims and counterclaims brought by the parties. This Court will first determine the order of priority in the boat and then decide any claims left unresolved by that determination.
A. The Governing Law
The threshold issue before the Court is whether this dispute is a governed by federal or state law. Both federal and state law have provisions governing secured transactions involving boats.
The Ship Mortgage Act of 1920, 46 U.S.C.A. 921, et seq., is a federal statute regulating mortgages on ships which have been registered as United States vessels. It provides for the enforcement of maritime liens in favor of those who furnish supplies or maintenance to such vessels. There is, however, no requirement that a boat be registered or a security interest therein filed with the federal government. See Chemical Bankv. Miller Yacht Sales, 413 A.2d 619 (N.J. 1980). In the instant action, the evidence discloses that in fact no such registration or filing was effected as to the boat. Therefore, the secured transactions here involved are subject to state law, the Uniform Commercial Code ("UCC").
Having found that the UCC applies to this dispute, the next issue is which state's version of the UCC will apply — Rhode Island or Massachusetts. R.I.G.L. 1956 (1985 Reenactment) §6A-9-103 is the conflict of laws section of the UCC which provides in pertinent part as follows:
 § 6A 9-103 Perfection of Security Interests in Multiple State Transactions
 (b) Except as otherwise provided in this subsection, perfection and the effect of perfection or non-perfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected.
(Emphasis added)
In this case, the boat (the collateral) was in Massachusetts when all of the events for perfection occurred and was transferred to Perrino in Rhode Island after default by Cook. Therefore, pursuant to § 6A-9-103(b), this Court finds the Massachusetts UCC is applicable to this dispute. This finding, however, is relatively insignificant as the Massachusetts UCC is virtually identical to that of Rhode Island.
B. Priorities of Interests in the Boat
The parties herein each claim an interest in the boat and priority in any proceeds obtained from a sale of the boat. The resolution of this priority dispute necessarily depends on the status of the parties' interests in the boat as provided by the UCC.
GMAC asserts that it possesses a perfected security interest in the boat that is superior to all other liens or encumbrances. It is GMAC's position that FBM assigned it all rights to the boat and that it properly filed financing statements in accordance with the applicable provisions of the UCC. Therefore, GMAC contends, upon default by Cook, it has the right, pursuant to the sales contract, to recover the boat.
FBM asserts that title to the boat did not pass to Cook because Cook never performed under the contract. FBM contends Cook failed to perform under the contract because the trade-in boat was subject to a lien for which FBM became liable. Furthermore, FBM contends, Cook had not paid the sale tax on the boat as of the time of delivery. In the alternative, FBM asserts that if this Court finds title did pass to Cook, it holds an interest that is second to GMAC's by virtue of the lien on the trade-in boat.
Perrino claims he possesses a perfected security interest in the amount of $50,000 that is second in priority to GMAC's.
Lastly, Cook contends title to the boat passed to her upon delivery of the boat by FBM. Cook further contends FBM failed to perform its contractual obligations under the contract by its failure to provide her with title documents. Cook contends that GMAC, as FBM's principal, is accountable for FBM's contractual breach. Therefore, Cook asserts, neither FBM nor GMAC hold a valid lien on the boat.
Section 9-109 of the Massachusetts UCC[2] delineates the classification of goods. Such a classification is relevant with respect to the method of perfection, in questions of priority and in resolving rights after default.
UCC § 9-109(1) defines "consumer goods" as those "used or bought for use primarily for personal, family or household purposes." In the instant case, the evidence reveals that the boat was purchased by Cook for the purpose of pleasure. The boat is, therefore, classified as a consumer good.
Generally, in order for a creditor to perfect a security interest in consumer goods, a financing statement must be filed. In the case at bar, the evidence discloses that GMAC filed financing statements with both the Town Clerk's office in Westford, Massachusetts and the Secretary of the Commonwealth of Massachusetts. UCC § 9-401(c) provides that the proper place to file in order to perfect a security interest in consumer goods is in the office of the state secretary and also in the office of the clerk of the town in which the debtor resides. At the time GMAC filed financing statements, Cook resided in Westford, Massachusetts. GMAC property filed financing statement in that town's clerk's office as well as with the Secretary of the Commonwealth of Massachusetts. Therefore, this Court finds that GMAC holds a validly perfected security interest in the boat.
With respect to Perrino's status, the evidence reveals that he was granted a security interest in the boat by Cook which secured a $50,000 promissory note executed by Cook and Tesell. Perrino immediately filed financing statements in Massachusetts, Connecticut and Rhode Island in July, 1988. Therefore, this Court finds Perrino also possesses a validly perfected security interest in the boat in the amount of $50,000.
As to FBM's interest in the boat, it contends that it holds legal title on the basis that it did not deliver the documents of title to Cook. This argument is without merit.
Article 2 of the UCC specifies at which time title to goods passes to the buyer. UCC § 2-401(2) provides as follows:
 § 2-401. Passing of Title: Reservation for Security: Limited Application of This Section.
 (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by a bill of lading . . .
Section 2-401(2) unambiguously provides that title to goods passes upon delivery to the buyer regardless of whether the seller is to deliver a document of title at a different time or place. In the instant case, FBM physically delivered the boat to Cook and Tessel on May 26, 1988. This Court finds title to the boat passed to Cook on May 26, 1988 irrespective of FBM's retention of documents.
As to FBM's interest in the boat, any interest Cook granted it in the sales contract was duly assigned to GMAC. Therefore, FBM has no rights or interest in the boat via the sales contract. This Court, is however, mindful that FBM was granted a Pre-Judgment Writ of Attachment from this Superior Court on July 25, 1989, in the amount of $50,000. After having tried this issue on the merits, this Court finds that Cook is liable FBM for the amount of $50,000.
Pursuant to UCC 2-312(1) there is a warranty that goods shall be delivered free from any security interest or other encumbrance. This warranty is breached when the transferee is faced with an adverse claim of title by a third party, valid or invalid to goods. In this case, when the trade-in boat was transferred to FBM it was warranted that title was free and clear of all liens or any security interests. This Court finds that this warranty was breached when FBM was successfully sued by a third party in Massachusetts, regardless of whether Cook had actual knowledge of any liens or security interests. Accordingly, this Court finds FBM possesses the status of a lien creditor with an interest in the boat in the amount of $50,000.
This Court, having determined the status of the parties, will now turn to the relative order of priority in the boat as provided by the UCC. The general provisions regarding priority disputes among security interests in the same collateral are specified in UCC § 9-312 which provides in pertinent part as follows:
 § 9-312 Priorities Among Conflicting Security Interests in the Same Collateral
 (5)(a). Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.
Thus, under subsection (5)(a), where both competing security interests are perfected by filing financing statements, the first party to file prevails.
In the case at bar, both GMAC and Perrino perfected their security interests by filing financing statements. GMAC filed its financing statements in May, 1988; Perrino filed his financing statements in July, 1988. Consequently, GMAC filed first and its interest is superior to Perrino's.
As a lien creditor, FBM acquired an interest in the boat by attachment in the amount of $50,000. UCC § 9-301(1)(b) provides that an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected. FBM was granted a Writ of Attachment by this Superior Court in July, 1989, which was subsequent to the time GMAC and Perrino perfected their security interests. Thus, FBM's interest in the boat does not have priority over the interests of GMAC or Perrino.
In conclusion, this Court finds the priority of interests in the boat as follows: GMAC, Perrino, FBM and lastly, Cook. Accordingly, GMAC has first priority in the boat with respect to pursuing its right under the sales contract against Cook. Perrino would then be entitled to any remaining equity in the boat to pursue his rights under the security agreement with Cook, followed by FBM.
C. Crossclaim and Counterclaims
This Court's determination of the priority issue resolves several claims brought by the parties. There remain, however, several counterclaims which warrant a separate discussion.
Perrino has brought a counterclaim against FBM alleging it improperly obtained the attachment orders and seeks monetary damages. Perrino contends FBM obtained said attachment orders to gain improper leverage and as a result the boat has been in storage for an extended time period causing it to substantially depreciate in value. As a result of the boat's depricated value, Perrino contends his interest in the boat will not be satisfied as GMAC's interest will exhaust the available equity. This argument is without merit.
There has been no evidence presented by the parties suggesting FBM obtained the attachment orders wrongfully or in bad faith. Indeed, the evidence demonstrates FBM's request for the attachment orders were granted upon an adequate showing by FBM that it had a reasonable liklihood of success on the merits and a need for security. As previously discussed, FBM became liable to a lienholder in Massachusetts for $50,000 on the trade-in boat. FBM was, therefore, perfectly within its legal rights in seeking an attachment order on the boat to protect its interest pending the resolution of its claim against Cook on the trade-in boat. Perrino's claim against FBM on this basis is therefore denied and dismissed.
Cook similarly alleges FBM improperly obtained the attachment orders on the boat. For the same reasons discussed above, this claim is denied and dismissed.
Lastly, Cook has asserted a counterclaim against both GMAC and FBM alleging negligence and improper conduct. It is Cook's contention that FBM negligently handled the trade-in boat and sought to recoup its loses by wrongfully attaching the boat and withholding title documents. Cook asserts GMAC is liable for FBM's actions as its principal. This argument is without merit.
As discussed above, this Court has found that FBM did not wrongfully obtain the attachment order and therefore any claim against FBM on this basis is denied and dismissed. As to GMAC, there has been no evidence presented to substantiate any claim of negligence or improper conduct. GMAC's limited role in this transaction was to finance a portion of the purchase price for the boat and it had no involvement in the transactions between Cook and FBM. Accordingly, the counterclaim of Cook against GMAC is denied and dismissed.
Counsel shall enter judgment in accordance with the above decision.
[1] Subsequent to the execution of the sale contract, Cook and Tesell were married. Tesell is a resident of Webster, Massachusetts.
[2] All UCC references herein made are to the Massachusetts UCC.